IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| QUINN AARON KLEIN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. CIV-12-1064-F |
| ) | |
| JUSTIN JONES, et al, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254[1] seeking a writ of habeas corpus. Pursuant to an order of United States District Stephen P. Friot, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the petition has been promptly examined, and for the reasons stated herein, it is recommended that the petition be **DISMISSED** upon filing.

## BACKGROUND

By this action, Petitioner challenges his conviction pursuant to a plea of nolo contendere to one count of first degree rape. Case No. CF-1994-7474, District Court of Oklahoma County. Petitioner's allegations, together with the electronic docket sheet for the criminal case to which he refers, show Petitioner received a five-year deferred

---

1   As an initial matter, the undersigned notes that Petitioner filed his petition on the form used for actions under 28 U.S.C. § 2254. However, in some of the grounds Petitioner is challenging the execution of his sentence rather than the fact of his conviction, and those grounds have been construed as arising under 28 U.S.C. § 2241. Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000).

sentence pursuant to his plea of nolo contendere on May 5, 1995. Petition, 2-3; Case No. CF-1994-7474, District Court of Oklahoma County, http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number=cf-1994-7474&db=Oklahoma&submitted=true (accessed December 5, 2012) (hereinafter "OSCN, Okla. County, CF-1994-7474").

Petitioner alleges that his deferred sentence was accelerated in 1999. Petition, 3. The docket sheet confirms that Petitioner's deferred sentence was accelerated pursuant to his plea of guilty, and he received a suspended sentence of seven years imprisonment to be served concurrently with his sentence in another case, Case No CF-95-1399, District Court of Cleveland County.  OSCN, Okla. County, CF-1994-7474.

The suspended sentence, imposed after acceleration of the deferral, was revoked in 2005. Petition, 3. The electronic docket sheet confirms that on October 28, 2005, Petitioner pled nolo contendere to the motion for revocation, and was sentenced to seven years imprisonment to run concurrently with CF-2003-3382, District Court of Oklahoma County (failure to comply with the sex offender registration act), and Case No. CR-05-101-C, United States District Court for the Western District (wire fraud, aid and abet). OSCN, *See* Okla. County, CF-1994-7474.

Petitioner raises four grounds in support of his request for federal habeas relief. In Ground One, he alleges that his right not to be subjected to double jeopardy was violated by both the acceleration of his deferred sentence and revocation of his suspended sentence. Petition, 6.  In Ground Two, he claims that at the time he was

2

convicted of first degree rape, the sex offender registration act only required registration for ten years. Petition, 7. He claims that the Oklahoma Department of Corrections is requiring lifetime sex offender registration pursuant to a 2007 amendment to the Sex Offender Registration Act, creating an unconstitutional ex post facto law. *Id.* In Ground Three, Petitioner alleges that he was not clearly advised by either the trial court or his attorney of his right to appeal.  Petition, 9. Finally, in Ground Four, Petitioner alleges "judicial conflict," claiming that the trial judge was herself committing felony crimes at the time she sentenced him. Petition, 11.

## SCREENING REQUIREMENT

District courts must review habeas petitions promptly and summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 Cases.[2] Additionally, "district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006).

"[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Day*, 547 U.S. at 210. Petitioner has such notice by this Report and Recommendation, and he will have an opportunity to present his position by filing an objection to this Report and Recommendation.

When raising a timeliness issue *sua sponte*, the district court must " assure itself

---

[2]  Rule 4 may be applied in the Court's discretion to actions brought pursuant to § 2241. *See* Rule 1(b), Rules Governing Section 2254 Cases in the United States District Courts.

3

that the petitioner is not significantly prejudiced . . . and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred." *Day,* 547 U.S. at 210 (internal quotation marks omitted); *Thomas v. Ulibarri*, No. 06-2195, 214 Fed. Appx. 860, 861 n.1 (10th Cir. Jan. 31, 2007). A court may dismiss a habeas petition *sua sponte* only if the petition is clearly untimely on its face. *See Kilgore v. Attorney General of Colorado,* 519 F.3d 1084, 1085 (10th Cir. 2008) (petition under § 2254).

The undersigned's initial review of the petition shows that Petitioner is not entitled to relief on the grounds he has raised, and to the extent his claims are cognizable in this habeas action they are untimely. For these reasons set forth more fully herein, it is recommended that the petition be **DISMISSED** upon filing

## DISCUSSION

### I. AEDPA Limitations Period

Before addressing Petitioner's grounds for relief, the undersigned notes The Antiterrorism and Effective Death Penalty Act's (AEDPA) one year limitations period applicable to the claims of a habeas petitioner in state custody. *Rhine v. Boone,* 182 F.3d 1153, 1154 (10th Cir. 1999). The one year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or

4

> laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Unless a petitioner alleges facts implicating subsection (B), (C), or (D), the limitations period generally begins to run from the date on which the conviction becomes final. *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). Petitioner has not alleged anything to suggest that subsection (C) would apply to the petition, but when liberally construed, his petition arguably suggests the applicability of subsection (D) with regard to the timeliness of the claims raised in Grounds Two and Three. However, for the reasons set forth below, the undersigned finds that § 2241(d)(1)(A) is the correct subsection for determining the commencement of the AEDPA limitations period with regard to Ground Three.  Although the timeliness of Grounds Two and Four arguably should be analyzed under § 2244(d)(1)(D), the date on which Petitioner could have through due diligence discovered the factual predicate of that claim, those grounds fail to state a claim for federal habeas for the reasons explained below and so the timeliness issue need not be addressed.

### A. GROUND ONE

In Ground One, Petitioner alleges that the 1999 acceleration of his five-year deferred sentence to a suspended sentence of seven years, and the 2005 revocation of

5

his suspended sentence, violate the prohibition against double jeopardy. Petition, 6. The undersigned finds that Petitioner's claim in Ground One is untimely. Although Petitioner has grouped his challenge to the accelerated deferred sentence and revocation of his suspended sentence into a single ground for relief, Oklahoma's rules governing finality of each proceeding are somewhat different and so they will be analyzed separately.

When a deferred sentence is imposed, "the [trial] court retains jurisdiction and only a conditional order, not a judgment and sentence, is entered." *Nguyen v. State*, 772 P.2d 401, 403 (Okla. Crim. App. 1989), *overruled on other grounds by Gonseth v. State*, 871 P.2d 51, 54 (Okla. Crim. App. 1994). A deferred sentence "is not a conviction until such time as the trial court pronounces judgment and sentence." *Belle v. State*, 516 P.2d 551, 552 (Okla. Crim. App. 1973). After an order deferring imposition of sentence is entered, a defendant can appeal the terms of probation entered as a part of the court's deferral order. Rule 1.2(D)(5)(a)(i) of the Rules of the Court of Criminal Appeals. Okla. Stat. tit. 22, Ch. 18. App. The defendant can also, at that time, challenge the validity of the underlying plea. *Id.* The electronic docket reflects that Petitioner did not challenge his deferred sentence. *See* OSCN, Okla. County, CF-1994-7474, p. 4-5.

If a defendant does not appeal the terms of the deferred sentence, and the deferral is later accelerated, he can appeal his underlying plea at the same time he challenges the validity of the acceleration order. *Gonseth*, 871 P.2d at 55. In order to

6

appeal the underlying plea, a defendant must use the same procedure applicable to the conviction in question—in this case, by a certiorari appeal. Rule 1.2(D)(5)(c) of the Rules of the Court of Criminal Appeals. Okla. Stat. tit. 22, Ch. 18. App.

As noted, Petitioner pleaded guilty to the application to accelerate and was sentenced to a seven-year suspended sentence on May 3, 1999. OSCN, Okla. County, CF-1994-7474, p. 8. Petitioner had ten days from that date to move to withdraw the underlying nolo contendere plea. *See* Rule 4.2, Rules of the Oklahoma Court of Criminal Appeals, Okla. Stat. tit. 22, Ch. 18 App. As he did not, his conviction for first degree rape became final for limitations purposes on or about May 13, 1999. *Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001). Thus, the AEDPA's one year limitations period began to run on May 14, 1999, and expired on May 14, 2000. *See Haws v. Jorgenson*, No. 05-4141, 219 Fed. Appx. 781, 783 (10th Cir. Mar. 14, 2007) ("Haws' conviction became final on January 28, 2004, and the one year period of limitations commenced the next day, January 29, 2004." (footnote omitted)); *Malone v. State*, Nos. 03-6246, 03-6175, 100 Fed. Appx. 795, 796 (10th Cir. June 8, 2004) (one year limitations period should be calculated using anniversary date method).

The review of an order revoking a suspended sentence is governed by the rules applicable to regular felony appeals. Rule 1.2(D)(4), Rules of the Oklahoma Court of Criminal Appeals, Okla. Stat. tit. 22, Ch. 18 App. However, the scope of review is limited to the validity of the revocation order—the validity of the predicate conviction can only be appealed through the appropriate appellate procedure, which as noted above is via

7

certiorari appeal. *Id.* Petitioner neither appealed his predicate conviction at the time the trial court accelerated his deferred sentence, nor the revocation of his suspended sentence. *See* OSCN, Okla. County, CF-1994-7474. Because Petitioner waived an appeal from the revocation of his suspended sentence, the revocation order of October 28, 2005, was final on November 7, 2005. Okla. Stat. tit. 22, Ch. 18 App. Rule 2.1(B) (filing Notice of Intent to Appeal and Designation of Record in district court within 10 days of from the date of the judgment and sentence is jurisdictional and failure to timely file constitutes waiver of the right to appeal). Thus, the one-year limitation period for appealing the revocation of Petitioner's suspended sentence began to run on November 8, 2005, and expired on November 8, 2006. *See Haws,* 219 Fed. Appx. at 783; *Malone,* 100 Fed. Appx. at 796.

This action was filed September 25, 2012, over twelve years after the limitations period expired with regard to the acceleration of Petitioner's deferred sentence. Petition, 2. Thus, absent statutory or equitable tolling, Ground One of the Petition is untimely.

### B. GROUND THREE

In Ground Three, Petitioner alleges that he was not advised of his right to appeal by the trial judge or his attorney. Petitioner does not identify the proceeding to which he refers: whether appeal from conditions of deferred sentence; appeal from underlying plea of nolo condentre; or appeal from the revocation of his suspended sentence. In any event, all three are untimely. Even if the timeliness of Ground Three is evaluated

under § 2244(d)(1)(D), which states that the limitations period does not start running until the petitioner discovers "the factual predicate of the [habeas] claim" Klein was put on notice that neither the court nor his attorney advised him of his right to appeal at the time of the proceedings in question. *See Klein v. Franklin*, No. 11–6111, 437 Fed.Appx. 681, 684 (10th Cir. Aug. 24, 2011). "[W]hile it is possible that Klein did not understand the legal significance of all these facts, the limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts." *Id.* As Petitioner was present at all three proceedings, he knew of the factual predicate of his claims *before* the date those proceedings were final under § 2244(d)(1)(A), and accordingly, § 2244(d)(1)(A) is the applicable measure of the limitations period.

This action was filed September 25, 2012, nearly six years after the revocation of his suspended sentence. Petition, 2. Thus, absent statutory or equitable tolling, Ground Three of the Petition is untimely.

### C. STATUTORY TOLLING

The AEDPA limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). However, state court filings made after the expiration of the statute of limitations have no tolling effect upon the limitations period. *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

Petitioner alleges that he challenged the acceleration of his deferred sentence

and the revocation of his suspended sentence by an application for state post-conviction relief. Petition, 6. The Oklahoma Court of Criminal Appeals' order affirming the state district court's denial of post-conviction relief is attached to the Petition. The Oklahoma Court of Criminal Appeals' order, dated September 18, 2012, affirmed the state trial court's denial of post-conviction relief on grounds that Petitioner's application was not verified[3] as required by Okla. Stat. tit. 22 § 1081. The Oklahoma Court of Criminal Appeals recites that Petitioner's application for post-conviction relief was filed in the state district court on July 3, 2012. Petition, Doc. 1-1, p. 1. Accordingly, it was filed after any of the applicable limitations periods had expired and had no statutory tolling effect.

### D. EQUITABLE TOLLING

The limitations period may be equitably tolled under circumstances where its application would possibly render the habeas remedy "inadequate and ineffective." *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). However, equitable tolling is limited to "rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). To justify equitable tolling, a petitioner must diligently pursue his claims and "demonstrate[] that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). The petitioner bears the burden to demonstrate that equitable tolling applies. *Cooper v.*

---

[3] The trial court's denial of post-conviction relief for failure to file a verified application, and the Oklahoma Court of Criminal Appeals' affirmance on that same ground, presents a question as to whether Petitioner "properly presented" his claims in the state court proceedings. However, as this case is untimely in any event, it is unnecessary to address this issue.

10

*Bravo*, No. 00-2462, 36 Fed. Appx. 343, 347 (10th Cir. Jan. 11, 2002) (citing *Miller*, 141 F.3d at 978).

In response to the form petition's question regarding timeliness, Petitioner states that he "was not aware of the right nor how to appeal in failure of advisement by judge." Petition, 14. It is well established that "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares* 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999)).

Even if Petitioner's allegation would constitute rare and extraordinary circumstances sufficient to justify equitable tolling of the limitations period, he must also demonstrate that he has diligently pursued his federal claims. *Gibson*, 232 F.3d at 808; *Marsh*, 223 F.3d at 1220. "[T]his Circuit has generally declined to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his federal claims." *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003).

Petitioner's filing history in this Court shows that he is aware of both the AEDPA limitations period, and the law governing statutory and equitable tolling. The Court's docket shows that in June 2010, Petitioner filed a habeas action with regard to a conviction in Lincoln County, Oklahoma. Case No. CIV-2010-603-F, United States District Court for the Western District of Oklahoma (challenging revocation of suspended sentence received following guilty plea to charge of second degree burglary,

11

Case No. CF–1996–134, District Court of Lincoln County). In February 2011, Magistrate Judge Doyle W. Argo recommended that the petition in that case be dismissed as untimely. *Klein v. Franklin*, No. CIV-2010-603-F, 2011 WL 1467782 (W.D. Okla. Feb. 8, 2011). That Report and Recommendation was adopted by Judge Friot, *Klein v. Franklin*, 2011 WL 1467780 (W.D. Okla. Apr 18, 2011), and the Tenth Circuit Court of Appeals denied a certificate of appeal on August 24, 2011. *Klein v. Franklin*, No. 11-6011, 437 Fed.Appx. 681 (10th Cir. Aug. 24, 2011) (unpublished op.).

In this action, Petitioner did not file a state application for post-conviction relief until July 3, 2012, and waited six to twelve years to file his federal habeas action. Therefore, Petitioner's allegations show that he has not acted diligently in pursuing his state post-conviction or federal habeas claims. Accordingly, equitable tolling is not appropriate here.

In light of the foregoing, it is recommended that Grounds One and Three of the Petition be dismissed as untimely.

## II.  GROUND TWO – EX POST FACTO VIOLATION

In Ground Two, Petitioner claims that subjecting him to lifetime registration as a sex offender constitutes an ex post facto application of Oklahoma's sex offender registration statute because at the time of his conviction for first degree rape, he was only subject to a ten year registration requirement. Petition, 7.  In the facts supporting this claim, Petitioner alleges that "Petitioner under 1995 & 1999 law required to register as sex offender for 10 yrs yet now DOC is requiring life time under the amendment in

2007 not retroactive but ex post facto. Not applicable to Petitioner." However, Petitioner is not entitled to relief on Ground Two as Oklahoma's Sex Offender Registration Act (OSORA), Okla. Stat. tit. 57, § 581, represents a civil regulatory scheme which does not violate the ex post facto proscriptions of either the United States or Oklahoma Constitutions.

Article I, Section 9, Clause 3 of the U.S. Constitution provides that "[n]o ... ex post facto Law shall be passed." The United States Supreme Court laid out a two-part test for determining whether a sex offender registration law constitutes retroactive punishment in violation of this provision:

> We must ascertain whether the legislature meant the statute to establish "civil" proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it "civil." Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Smith v. Doe*, 538 U.S. 84, 92 (2003) (citations and internal quotation marks omitted). With respect to the legislative intent prong of the test, "[w]hether a statutory scheme is civil or criminal 'is first of all a question of statutory construction.' We consider the statute's text and its structure to determine the legislative objective." *Id.* (citations omitted).

The best evidence of legislative intent is the statutory text itself. *See id.* at 93.

The Oklahoma Legislature expressly identified public safety as the Act's primary objective:

> The Legislature finds that sex offenders ... pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that *a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting the public safety.*

Okla. Stat. tit. 57, § 581(B) (emphasis added). Protecting the public by placing restrictions on sex offenders is "'a legitimate nonpunitive governmental objective and has been historically so regarded.'" *Smith*, 538 U.S. at 93 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997)). Thus, the legislature's stated purpose indicates an intent to establish a civil regulatory scheme rather than a punishment. The Oklahoma Court of Civil Appeals has so held:

> In *Smith*, the United States Supreme Court examined the Alaska Sex Offender Registration Act, and recognized that state's creation of a nonpunitive, civil regulatory scheme which did not violate the Ex Post Facto Clause.
>
> ...
>
> So guided, we have examined OSORA.  Like its federal counterpart, OSORA was enacted to protect the people of this state and supports "Congress's intention that it operate as a civil regulatory scheme designed to protect the general public welfare." OSORA imposes no "affirmative disability or restraint." The registration requirements of OSORA do "not increase punishment for acts committed prior to [its] effective date."
>
> We therefore hold OSORA represents a civil regulatory

scheme which does not violate the ex post facto proscriptions of either the United States or Oklahoma Constitutions.

*Freeman v. Henry,* 245 P.3d 1258, 1259-1260 (Okla. Civ. App. 2010) (petitioner argued that because convictions pre-dated enactment of OSORA, application of the OSORA registration requirements to him violated ex post facto proscriptions of the United States Constitution).

The undersigned finds these authorities persuasive, and Petitioner's claim that application of subsequent changes in Oklahoma's sex offender registration requirements to him is not a violation of the Ex Post Facto clause, and Ground Two does not state a claim for federal habeas relief.

## III. GROUND FOUR

In Ground Four, Petition claims "judicial conflict," alleging that "Judge was committing felony crimes while sentencing me." [4] Petition, 11. Due process requires a " 'trial in a fair tribunal' " before a judge "with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (citations omitted). According to the Petitioner, Judge Bass-Lesure's misconduct prevented performance of her judicial duties in a fair manner. This argument is

---

[4] Petitioner is apparently referring to former judge, Tammy L. Bass-Lesure. Ms. Bass-Lesure, who presided over Petitioner's criminal case, entered a guilty plea on March 2, 2012, to two felony counts of Fraud in Obtaining Assistance in the case of *State of Oklahoma v. Tammy L. Bass–Lesure*, District Court for Oklahoma County, Case No. CF–2011–385. Pursuant to a negotiated plea, she received a three year deferred sentence on each count to run concurrently. The Oklahoma Supreme Court found her conduct to be in violation of Rules 8.4(b), (c) and (d), Oklahoma Rules of Professional Conduct, and Rule 1.3, RGDP, and that those violations facially demonstrated her unfitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Bass-Lesure*, 286 P.3d 1228 (Okla. 2012). Ms. Bass-Lesure's application to resign pending disciplinary proceedings was granted on September 10, 2012. *Id.*

unconvincing because it rests on generalized allegations rather than a factual basis involving fairness in the handling of his criminal case. The Tenth Circuit Court of Appeals addressed similar allegations in *Ross v. Parker*, 304 Fed. Appx. 655 (10th Cir. Dec. 19, 2008) (unpublished op.), and *Smith v. Jones*, 226 Fed. Appx. 814 (10th Cir. Apr. 5, 2007) (unpublished op.).

In *Ross*, the petitioner's state court appeal had been affirmed only a few weeks before a judge of the Oklahoma Court of Criminal Appeals resigned from the tribunal. *Ross*, 304 Fed. Appx. at 657. In a petition for a writ of habeas corpus, the petitioner argued that the judge's participation in his appeal had denied him due process because "^the case deal[t] with drugs, which the judge's suspension had something to do with[.]' " *Id.* at 658. The Tenth Circuit affirmed the denial of habeas relief, concluding that the petitioner had presented no evidence of "actual bias" and had alleged "only the faintest appearance of bias." *Id.*

In this case, Petitioner has not alleged any connection between former judge Bass-Lesure's misconduct and the rulings she made in his case. The connection, to the extent it could be characterized as such, is even more tenuous than that rejected in *Ross*. It is undisputed that the judicial misconduct charges against the district court judge were unrelated to Petitioner' prosecution for first degree rape. Petitioner does not allege that the district court judge acted improperly during trial or sentencing or that the judge prejudiced him in any way. *See U.S. v. Hunt*, 435 Fed.Appx. 721, 724 (10th Cir. June 9, 2011). Accordingly, the undersigned finds that Ground Four fails to raise a

claim for federal habeas relief.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition be **DISMISSED** upon filing. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **January 14, 2013**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). The Clerk of the Court is directed to electronically forward a copy of this Report and Recommendation to the Attorney General for the State of Oklahoma on behalf of the Respondent at fhc.docket@oag.state.ok.us.  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

DATED December 27, 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

17